LÓPEZ, PETITIONER, v. DISTRICT COURT OF GUAYAMA, RESPONDENT.

PETITION for a Writ of Certiorari to the District Court of Guayama.

No. 378.—Decided July 29, 1922.

ALIMONY—CONTEMPT.—Disobedience to a final order allowing alimony may be punished in proceedings for contempt.

ID.—ID.—A district court has authority to issue and enter in chambers an order summoning a defendant husband to appear and show cause why he should not be punished for disobedience of a final order imposing upon him the payment of alimony to his wife, the plaintiff in an action for divorce.

DIVORCE—RECEIVER—CONJUGAL PARTNERSHIP.—According to the terms of section 182 of the Code of Civil Procedure, the court may appoint a receiver to take possession of the properties belonging to the conjugal partnership at any stage of an action of divorce and while it is being prosecuted.

The facts are stated in the opinion.

*Mrs. H. Tormes* for the petitioner.

The respondent did not appear.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

In an action for divorce brought in the District Court of Guayama by Margarita Coll against Carmelo López Barros, the said court sustained a motion of the plaintiff for alimony by an order which reads as follows:

"At the hearing on the motion for alimony in the above-entitled case the plaintiff appeared by attorney Martínez Dávila and the defendant made no appearance. Considering the evidence submitted by the plaintiff, and the necessity of the alimony asked for by her having been established, the court orders that defendant Carmelo López Barros pay to the plaintiff, through the office of the clerk of this court, a monthly sum of $60 beginning today; and it

is directed that this order be served on the said defendant for due compliance with the same.''

After the said order had been made the plaintiff complained to the lower court that the defendant had not paid the alimony, and by an order of June 30, 1922, the court ruled the defendant to appear at chambers on July 7, 1922, to show cause why he should not be punished for contempt, the pertinent part of that order reading as follows:

''WHEREAS, the plaintiff, Margarita Coll, has informed this court by affidavit that you, the said defendant, have not heretofore paid to her any sum of money, either directly, or through the clerk of this court, or through any other channel, in disobedience of the order of this court of May 12, 1922; THEREFORE, you Carmelo Ló- pez Barros, the said defendant, are hereby ordered to appear before the judge of this court, without any excuse whatever, in his office in the building occupied by this court at No. 16 Hostos Street, at 10 A. M. on July 7, 1922, to show cause, if any you have, why you should not be punished for contempt.''

Another motion by the plaintiff for the appointment of a receiver to take charge of the properties of the conjugal partnership during the pendency of the action for divorce was sustained by the court in the following order:

''Considering the motion of the plaintiff for the appointment of a receiver, the motion in opposition filed by the defendant and the recommendation of the plaintiff for the appointment of Jesús Rivera as such receiver, after hearing the evidence submitted by the plaintiff, the defendant offering none, although having been duly summoned and notified of the date set for the hearing, the court orders the appointment of Jesús Rivera as receiver of the personal property belonging to the conjugal partnership of Carmelo López Barros, defendant, and Margarita Coll, plaintiff, after taking the necessary oath and filing a bond in the sum of $500 to answer for the faithful discharge of the duties and obligations pertaining to said trust. Let this order be communicated to the parties and their attorneys.''

On the proceedings as described the defendant filed this

petition for a writ of certiorari for a review of the action of the lower court, praying this court for such an order as may be in conformity with the law and the facts as they may appear.

The preliminary writ was issued and we have before us the original record, together with the briefs of the in-- terested parties.

Regarding the rule to show cause why he should not be punished for contempt, the petitioner alleges: First: That the lower court was without power to proceed in this matter at chambers, but only in open court, as provided in section 11 of the Code of Civil Procedure of Porto Rico and the Sixth Amendment to the Constitution of the United States. Second: That the defendant has not refused, either ob- stinately or otherwise, to obey any lawful order of the lower court. Third: That in accordance with the provisions of section 164 of the Civil Code, any order of the court may be executed in some manner by a ministerial officer within proceedings for enforcing payment of alimony; and that by the order of the court the defendant is placed in the position of a debtor and any judgment that the court may render in this proceeding would amount to punishment of the de- fendant for debt, which is contrary to the Constitution of the United States.

The allegations of the petitioner amount to an assign-- ment of errors, and we shall examine them in the same order in which they were submitted.

1. Section 22 of the Code of Civil Procedure adopted March 1, 1904, as amended on March 8, 1905, reads as follows:

"Sec. 22. — District judges at chambers, if so requested, may grant:

" (*a*) All writs, orders or processes of any kind which are granted in all *ex parte* questions, or where there is no opposition;

" (*b*) All writs of mandamus, certiorari, inhibitory and prohibi- tory;

" (*c*) All orders, interlocutory decrees, and any resolution af-

fecting the procedure or tending to insure the enforcement of the decision demanded before or after answering the complaint and also during the time of the execution of the decision.

"In the cases referred to in paragraphs (*b*) and (*c*), the party or parties affected by the decision may, within the following five days, oppose such decision and the question so raised shall be decided by the judge at chambers within a period not to exceed ten days from the date such opposition was made."

The amendment made to the said section as originally enacted consisted in the addition of subdivision (*c*).

This means that the powers of the judges were extended to issuing at chambers orders, interlocutory decrees and all orders affecting the procedure or tending to secure the effectiveness of a judgment.

The order of the lower court of May 12, 1922, allowing alimony, which was made while the court was not in vacation, was appealed from and is an executable order because it is final. Whatever may be the remedy allowed by law for its execution, our conclusion is that the lower court had power to make at chambers any order necessary to secure the effectiveness of the final order granting alimony.

2. The order to show cause of June 30, 1922, was based on the fact that the defendant had refused to comply, or had been negligent in complying, with the order granting alimony. It may be observed that this is a question of fact that can not be reviewed by certiorari. The argument of the petitioner on that point is devoid of legal interest in this proceeding.

3. We do not see that section 164 of the Civil Code, cited by the petitioner in his petition, is pertinent to or has any appropriate connection with this case. That section refers to the causes for divorce established by our Civil Code, and it appears that the citation is erroneous. At all events, the petitioner maintains that the order granting alimony may be executed by a ministerial officer and that the punishment that might be imposed upon him would amount to a

sentence for debt.   This question is not new to this court.
In the case of *Frau* v. *Canals*, 8 P. R. R. 114, cited by the
petitioner in support of his theory, the same question was
decided.   But the point which we must discuss here is whether
at the time when that case was decided the statutes in force
contained the same requirements and whether the principles
laid down in that judgment still obtain.   That case originated
on October 27, 1903, before the present Code of Civil Pro-
cedure was adopted.   The said code went into effect on
March 1, 1904, and is an essentially American code.   In 1903
the revised Civil Code was already in force and although it
was almost a total reproduction of the Spanish Civil
Code, yet it introduced fundamentally new features in our
laws in the matter of divorce.   The trial court of Arecibo
then believed, applying a principle of international law,
that in a country ceded to another and in which laws of the
sovereign country were established, they should be construed
in conformity with the institutions, spirit and jurisprudence
of the sovereign country, and that this permitted the enforce-
ment of the payment of alimony by proceedings for con-
tempt.   However, this court reversed the judgment of the
court below on the ground that it was sought only to deter-
mine what was the proper procedure in a particular case,
regarding which the Spanish Law of Civil Procedure was
clear and left no room for doubt or difficulty whatever, the
procedure provided for being compulsory and summary.

But at present we have a new procedural law.   This law
determines the means for compelling compliance with an
order like that of June 12, 1922, granting alimony.

Section 28 of the Code of Civil Procedure reads as follows:

"Sec. 28.—Every judicial officer has power:

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

"2. To command obedience to his lawful orders, as provided in
this Code. ＊ ＊ ＊ "

And section 29 of the Code reads as follows:

"For the effectual exercise of the powers conferred by the last section, a judicial officer may punish for contempt in the cases provided in this Code."

According to these statutes, the means authorized by law for compelling obedience to an order like the one here involved can not be of an alternative or supplementary character, inasmuch as the old procedural law was repealed in so far as it was inconsistent or incompatible with the present Code, and, furthermore, the remedy established by the present law of procedure is definite and independent. Therefore, the case of *Frau* v. *Canals, supra,* is not applicable since the enactment of the new Code of Civil Procedure, because that case originated in 1903 under the proceedings governed by the old Spanish Law of Civil Procedure, and, on the contrary, the theory which the Arecibo court attempted to include in our jurisprudence is now perfectly applicable. The principal reasons stated by the court were the following:

"The Supreme Court of Porto Rico has on a number of occasions announced the principle that in the construction and application of the divorce laws of Porto Rico recourse should be had to the jurisprudence of the United States, and in its opinion of February 20, 1902, in the action for divorce brought by María del Carmen Marimon against her husband, Francisco Pelegrí, it was held that when the Congress of the United States gave to Porto Rico a system of laws relating to marriage and divorce, in many respects in absolute conflict with the laws in force in the Island at the time of the signing of the Treaty of Paris, it was clearly the intention that such laws should resemble in theory and practice the laws in force in the United States, and that they should be applied and enforced in accordance with American principles of jurisprudence and construed in the same manner.

"For this reason the court is not confined to the procedure established in the Law of Civil Procedure in enforcing payment of the allowance for support, but it may choose between such law and the mode of procedure established by the jurisprudence of the different States of the Union.

"In American jurisprudence the most usual manner of enforcing the payment of alimony is by means of proceedings for contempt,

as stated by Bishop, an authority on this subject, in section 1092 of volume 2 of his work on Marriage, Divorce and Separation, and this is also deduced from the numerous opinions cited in said section.

"Unless the cause of delay in the collection is explained, the courts do not generally enforce payment by this method of sums due for more than one year, according to the same author, section 1098, *id.*

"In the present case this method is especially applicable, because the records of the actions between these parties clearly show the intention of the defendant, Canals, to resist and evade the order of the court and at any cost to avoid the payment of the monthly instalments which he owes his wife."

The theory maintained by the District Court of Arecibo in 1903 may have been premature, but the principles always obtain, and when they are based on a really humane theory they must prevail. The enforcement of an order allowing alimony is more or less dilatory and its delay would cause serious injustice, as it is a question of support, and failure to comply with it, inasmuch at its object is to supply peremptory needs, would affect the very life of the persons in need, which would be much more regrettable and reproachable when there are children. Thus under the Common Law, which is the source of inexhaustible remedies based upon principles of natural law, recourse was had to a more energetic proceeding, as is that for contempt, not exactly for the collection of the alimony, but principally to punish the inhumane negligence of the person who refuses to obey judicial orders of the nature of the one here involved allowing alimony. That proceeding is now authorized by statute and we must uphold the action of the lower court.

The second order which the petitioner seeks to have reviewed in these proceedings is that appointing a receiver to take charge of the community property to be managed under the control of the court until the termination of the action for divorce.

We believe that our statutes present no difficulties for the decision of this question raised by the petitioner, nor is it new matter that comes for the first time before this court.

Subdivision 1 of section 182 of the Code of Civil Procedure reads as follows:

"Sec. 182.—A receiver may be appointed by the court in which an action is pending or has passed to judgment, or by the judge thereof:

"1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or jointly interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.   *   *   *"

The community property belongs to the conjugal partnership, and whether the spouses are considered as members of the said partnership, or whether, because of the nature of the marriage contract, it is understood that the said property is held by them in common as interested parties, it is unquestionable, according to the statute quoted, that the court has authority to appoint a receiver to take possession of the properties belonging to the conjugal partnership at any stage of an action for divorce and during its pendency. If this remedy were not available there would be found no protection in the law for avoiding fraud in case either of the spouses in an action for divorce should attempt to dispose of the personal property of the community, or if it should be exposed to being lost or materially injured.

The case of *Vázquez Prada et al.* v. *Córdova Dávila,* 22 P. R. R. 656, cited by the plaintiff, has no relation to the question under discussion; but that of *Masson* v. *Campillo,* 28 P. R. R. 394, is of more recent date and is strictly applicable to the present case.

For the foregoing reasons the writ must be discharged.

*Writ discharged.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.